Ammar Dadabhoy
Wong Fleming
State Bar No: 24088812
325 North St. Paul Street, Suite 3100
Dallas, TX 75201
Phone: (281) 340-20704
Fax: (866) 240-0629
Email: adadabhoy@wongfleming.com

Richard G. Foster
State Bar No. 07295100
Email: rfoster@prdg.com
Raj S. Aujla
State Bar No. 24064846
Email: raujla@prdg.com
Porter, Rogers, Dahlman & Gordon, P.C.
745 E. Mulberry, Suite 450
San Antonio, Texas 78212
Telephone: (210) 736-3900
Direct: (210) 547-9329
Fax: (210) 736-1992

ATTORNEYS FOR HUMANA INC., HUMANA INSURANCE COMPANY
AND HUMANA MILITARY

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **REVOLUTION MONITORING, LLC** | § | CASE NO. 18-33730-hdh |
| | § | |
| **REVOLUTION MONITORING** | § | CASE NO. 18-33731-hdh |
| **MANAGEMENT LLC,** | § | |
| | § | |
| **REVOLUTION NEUROMONITORING LLC** | § | CASE NO. 18-33732-hdh |
| | § | |
| Debtors. | § | (Jointly Administered) |

| | | |
|---|---|---|
| **MEDARC, LLC as Collection Agent for** | § | |
| Jeffrey H. Mims, Trustee of the Liquidating | § | |
| Trust of Revolution Monitoring, LLC , | § | |
| Revolution Monitoring Management, LLC, and | § | |
| Revolution Neuromonitoring, LLC | § | |
| | § | |
| *Plaintiff,* | § | Adversary No. 20-03113 |

i

|  | § |
| v. | § |
|  | § |
| **Humana, Inc., et al.** | § |
|  | § |

## <u>DEFENDANT HUMANA INC., HUMANA INSURANCE COMPANY AND HUMANA GOVERNMENT BUSINESS D/B/A HUMANA MILITARY'S BRIEF IN SUPPORT OF ITS MOTION TO WITHDRAW THE REFERENCE</u>

## TABLE OF CONTENTS

I.   **Introduction** ................................................................................................................ 1

II.  **Factual Background** ................................................................................................. 3

III. **Argument and Authorities** ................................................................................... 5

      **A.**      **Withdrawal of the Reference Here Is Mandatory under 28 U.S.C. § 157(d).** ... 6

      **B.**      **Alternatively, the Court Should Permissively Withdraw the Reference Because the *Holland* Factors Strongly Weigh in Humana's Favor.** ............................... 10

          **i.  Plaintiff's Complaint Asserts Only Non-core Claims.** ..................................... 10

          **ii. Humana Reserves its Right to Assert Its Seventh Amendment Right to a Jury Trial** ........................................................................................ 11

          **iii.The Remaining *Holland* Factors Weigh in Favor of Withdrawal** ................. 12

      **C.**      **The District Court Should Conduct All Pretrial Matters** ................................ 13

IV. **PRAYER** ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                         **Page(s)**

*Adler v. Walker (In re Gulf States Long Term Acute Care of Covington, L.L.C.),*
    455 B.R. 869 (E.D. La. 2011) ...............................................................................13

*Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.),*
    266 F.3d 388 (5th Cir. 2001) ...............................................................................14

*City of Clinton, Ark. v. Pilgrim's Pride Corp.,*
    No. 4:09-CV-386-Y, 2009 WL 10684933 (N.D. Tex. Aug. 18, 2009) .....................................6

*In re Clay,*
    35 F.3d 190 (5th Cir. 1994) ........................................................................10,11,12

*Curtis v. Cerner Corp.,*
    No. 7:19-cv-00417, 2020 WL 1983937 (S.D. Tex. Apr. 27, 2020).................................10,12

*Curtis v. Loether,*
    415 U.S. 189 (1974).......................................................................................11

*Guffy v. Brown (In re Brown Med. Ctr., Inc.),*
    No. BR 15-3229, 2016 WL 406959 (S.D. Tex. Feb. 3, 2016).................................12

*Holland Am. Ins. Co. v. Succession of Roy,*
    777 F.2d 992 (5th Cir. 1985) ....................................................................... *passim*

*Houston Methodist Hosp. v. Humana Ins. Co.,*
    266 F. Supp. 3d 939 (S.D. Tex. 2017) ...................................................................8

*In re Jagow v. Mut. Of Omaha Ins. Co. (In re Precedent Health Ctr. Operations, LLC),*
    392 Fed. Appx. 618 (10th Cir. 2010).....................................................................6

*Kite v. Kite,*
    No. 2:13- CV-2131, 2014 WL 688196 (W.D. La. Feb. 13, 2014).........................................13

*Levine v. M & A Custom Home Builder & Developer, LLC,*
    400 B.R. 200 (S.D. Tex. 2008) (mem. op.) (Rosenthal, J.) ...................................................11

*Lifemark Hosps. of La., Inc. v. Liljeberg Enters., Inc. (In re Liljeberg Enters., Inc.),*
    161 B.R. 21 (E.D. La. 1993) ...............................................................................6

*Mertens v. Hewitt Assocs.,*
    508 U.S. 248 (1993).......................................................................................7

*Mirant Corp. v. S. Co.*,
    337 B.R. 107 (N.D. Tex. 2006)...........................................................................................11

*Mobley v. Quality Lease & Rental Holdings, LLC (In re Quality Lease & Rental Holdings, LLC)*,
    No. 14-60074, 2016 WL 416961 (Bankr. S.D. Tex. Feb. 1, 2016) .......................................10

*Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co.*,
    No. 3:11-CV-2205-D, 2012 WL 4442368 (N.D. Tex. Sept. 26, 2012) ..................................11

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41 (1987).................................................................................................................7

*In re St. Mary Hosp.*,
    115 B.R. 495 (E.D. Pa. May 11, 1990) .................................................................................6

*Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.*,
    875 F.3d 584, 586 (11th Cir. 2017) .....................................................................................7

*United States Gypsum Co. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*,
    145 B.R. 539 (N.D. Tex. 1992)...........................................................................................5, 6

*Wood v. Wood (In re Wood)*,
    825 F.2d 90 (5th Cir. 1987) ...............................................................................................10

**Statutes**

10 U.S.C. § 1071 ...................................................................................................................4,8

10 U.S.C. § 1073a .................................................................................................................4,8

28 U.S.C. § 157 ...................................................................................................................1,13

28 U.S.C. § 157(a) .................................................................................................................4,5

28 U.S.C. § 157(d) .............................................................................................................. *passim*

29 U.S.C. § 1001(b) ................................................................................................................6

29 U.S.C. § 1104 .....................................................................................................................2

29 U.S.C. § 1109 .....................................................................................................................2

29 U.S.C. § 1132(a) .................................................................................................................1

29 U.S.C. § 1132(a)(2)-(3)......................................................................................................1,2

29 U.S.C. § 1132(a)(1)(B) ......................................................................................................1,2

29 U.S.C. § 1132(g)(1) .................................................................................................2

28 U.S.C. § 1331 ..........................................................................................................2

28 U.S.C. 133§4 ........................................................................................................1,5

42 U.S.C. § 405(g) .......................................................................................................7

**Other Authorities**

Misc. Order No. 33 .....................................................................................................4,5

Southern District of Texas General Order No. 2011–12 ..............................................11

Fed. R. Bank. P. 5011(a)...............................................................................................1

Northern District of Texas Local Bankruptcy Rule 5011-1...........................................1

Humana Inc., Humana Insurance Company and Humana Government Business d/b/a Humana Military (collectively, "Humana"), by and through their undersigned attorney, respectfully file this motion under 28 U.S.C. §157(d) and Rule 5011 of the Federal Rules of Bankruptcy Procedure to withdraw the reference of the adversary proceeding, Case No. 20-03113-hdh (the "Adversary Proceeding").[1] In support of this motion, Humana states as follows:

## I.    Introduction

On September 27, 2018, Revolution Monitoring, LLC filed[2] its chapter 11 petition in the United States Bankruptcy Court for the Northern District of Texas. On September 18, 2020, Plaintiff, MedARC, LLC, ("MedARC") as collection agent for Jeffrey H. Mims, Liquidating Trustee for Revolution Monitoring, LLC, Revolution Monitoring Management, LLC and Revolution Neuromonitoring, LLC (collectively "Revolution"), commenced this adversary proceeding by filing a complaint against Humana in this Court (the "Adversary Proceeding").

Humana has not yet responded to the Complaint and intends to file a motion to dismiss the Complaint. In the event the case proceeds following the motion, Humana intends to request a jury trial if afforded that right under the remaining claims. Humana asserts that MedARC's claims in the Adversary Proceeding are not core proceedings, and Humana does not consent to the entry of final orders or judgments by the Bankruptcy Court. In addition, Humana Inc. would show that it is not a proper party to this proceeding since it is not an insurance company, did not issue any of the health plans at issue, and has no connection with any of the claims at issue in this case. During pre-suit discovery, MedARC was provided with information establishing that Humana Inc. was not a proper party to this dispute. Nevertheless, this information was ignored and Humana Inc. was

---

[1] This motion "shall be heard by a district Judge" Fed. R. Bank. P. 5011(a). Under Local Bankruptcy Rule 5011-1, motions for withdrawal must be filed with the clerk of the Bankruptcy Court but shall be directed to the District Court.
[2] Related filings were also submitted for Revolution Monitoring Management, LLC (Case No. 18-33731) and Revolution Neuro Monitoring LLC (18-33732.) The cases were jointly administered.

included in this proceeding. As such, while this Motion makes reference to all of the Humana Defendants collectively as "Humana", Humana Inc. is not waiving its right to seek dismissal at the appropriate stage of the case given its lack of involvement in the claims at issue.

The Complaint asserts alleged jurisdictional grounds under 28 U.S.C. § 157 and 28 U.S.C. 1334.  MedARC asserts several claims under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), including claims to recover health plan benefits under § 1132(a)(1)(B) and claims for restitution, injunctive, and declaratory relief for alleged breaches of fiduciary duty and procedural violations under § 1132(a)(2) and (a)(3), as well as state-law claims for breach of contract, promissory estoppel, and quantum meruit. MedARC acknowledges that its claims are not core bankruptcy proceedings, and Humana does not consent to the entry of final judgment by the Bankruptcy Court. As such, the District Court must conduct a *de novo* review, and, furthermore, the reference to the Bankruptcy Court should be withdrawn.

Since the majority of the federal claims stated in this Complaint are, as pleaded by MedARC, based on ERISA, a federal statute, and federal jurisdiction is premised on 28 U.S.C. § 1331, the Complaint is subject to mandatory withdrawal of the reference.  The issues raised in the Adversary Proceeding will require material consideration of ERISA, a non-bankruptcy federal law. In addition, with respect to Humana, the majority of claims for services allegedly rendered by Revolution involve government programs such as the federal Medicare Advantage program and the federal TRICARE program, which also involve complex non-bankruptcy federal laws. Therefore, as set forth in greater detail below, the issues raised in the Adversary Proceeding must be resolved by an Article III Court.

The Bankruptcy Court has not decided any substantive matters on these claims yet, and the most efficient use of judicial resources for the courts and the parties is for the District Court to conduct all proceedings in this case. Humana's Motion should therefore be granted.

## II.         Factual Background

MedARC's Original Complaint ("Complaint") alleges that "[Humana's] misconduct forced Revolution to cease operations and seek relief under the Bankruptcy Code." Complaint at ¶ 69. MedARC, however, is a third-party collection agent, and is not itself a fiduciary on behalf of Revolution's bankruptcy estate or a successor-in-interest to Revolution. Rather, MedARC is merely a collection agency who acquired the right to pursue certain accounts receivable claims pursuant to Revolution's confirmed plan and an assignment from a different non-debtor third party, Revolution's former lender, Xynergy Healthcare Capital ("Xynergy").

In fact, at least $1.7 million of the amount that MedARC is suing to collect in these cases is ***not*** being pursued on behalf of the bankruptcy estate at all, but, rather, on behalf of Xynergy. Xynergy assigned its rights to Revolution's health plan receivables to MedARC,[3] and any monies collected on a judgment against Humana in this Adversary Proceeding (net of professional fees) has virtually nothing to do with this bankruptcy case, does not materially belong to the bankruptcy estate and must first be paid to Xynergy.[4]  After Xynergy is paid, MedARC itself (for its own account) retains the vast majority of any additional proceeds collected, meaning that only a fraction of any recovery in this case would provide any conceivable benefit to Revolution's unsecured creditors.[5]

---

[3]    Case No. 18-33730-hdh11, Dkt. No. 138, pp. 23-27 (Assignment & Payout Agreement).
[4]    Case No. 18-33730-hdh11, Dkt. No. 138, pp. 23-27 (Assignment & Payout Agreement).
[5]    Case No. 18-33730-hdh11, Dkt. No. 138, pp. 23-27 (describing percentage split between MedARC and Xynergy).

3

Prior to its bankruptcy filing, Revolution submitted medical claims to Humana for payment of services allegedly provided to patients covered under health benefit plans administered by Humana. The majority of these patients were covered under Medicare Advantage or TRICARE plans which are governed by federal regulations and funded with federal dollars. Out of the medical claims submitted by Revolution, Humana paid certain claims while denying others, in whole or in part. MedARC now seeks payment on these claims.

After a thorough investigation of the claims at issue, the claims at issue against Humana Insurance Company ("HIC") are largely covered by Medicare Advantage plans. Congress created Medicare Part C (originally known as Medicare + Choice ("M+C") now known as Medicare Advantage ("MA")) nearly twenty years ago to provide Medicare beneficiaries with a managed care option through MA plans which are administered by MA organizations ("MAOs") like HIC.

Humana Government Business ("HGB") provides health care benefits to its TRICARE enrollees at the direction, and on behalf, of the federal government. In particular, HGB partners with the Defense Health Agency ("DHA") to provide managed care support (MCS) to DHA for the East Region of the TRICARE program, which includes Texas. As a regional TRICARE MCS contractor, HGB is charged with providing eligible TRICARE enrollees with health insurance and conducts business under the delegation of the federal government. 10. U.S.C. §§ 1071, 1073a. Simply put, MedARC's claims against HGB implicate non-bankruptcy federal law and TRICARE regulations in the same manner as MedARC's claims against HIC implicate non-bankruptcy federal law and Medicare regulations. In both instances, significant interpretation of complex non-bankruptcy federal law and the regulations implementing federally funded health care programs is necessary. Analysis of federal bankruptcy law is not an issue.

Because these proceedings only involve claims regarding benefits due under patient's health plans, the vast majority of the claims at issue are governed by non-bankruptcy federal law relating to the Medicare and TRICARE programs. While MedARC's complaint is focused on claims governed by ERISA, a different set of federal non-bankruptcy laws, MedARC filed virtually identical complaints against all the plan sponsors indicating that MedARC did not analyze the claim population of each defendant prior to filing the adversary proceeding, even though Humana had provided the relevant documents and information to perform that analysis prior to filing the complaint. Accordingly, these claims should not and must not be adjudicated by the Bankruptcy Court. The District Court is the proper forum for this entire proceeding.

### III.    Argument and Authorities

Congress provided the District Court with original jurisdiction in any or all cases under title 11 and vested the authority to the District Court judges to refer to bankruptcy judges "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157(a). Under this District Court's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc, all proceedings arising in, or related to, a case under Title 11 are automatically referred to the Bankruptcy Judges. *See* Misc. Order No. 33 (dated Aug. 3, 1984).

However, on timely motion of a party, a district court must, in some cases, withdraw a proceeding that has been referred to a bankruptcy court. The withdrawal becomes mandatory if the Court determines that resolution of the proceeding requires consideration of federal laws other than bankruptcy laws. Withdrawal may also be permissive based on good cause shown. Review of the proceedings here necessitates withdrawal under either standard.

**A.      Withdrawal of the Reference Here Is Mandatory under 28 U.S.C. § 157(d).**

Under 28 U.S.C. § 1334(b), district courts have original jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11." Each district court may, however, "provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). Pursuant to this authority, the United States District Court for the Northern District of Texas issued an order referring all bankruptcy cases filed in the district to the bankruptcy court. *See* Miscellaneous Order No.33, *Order of reference of bankruptcy cases [etc.]* (Aug. 03, 1984).

However, pursuant to 28 U.S.C. § 157(d):

The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely notice of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

Under this Court's precedent, a motion to withdraw must be granted when: (1) the motion was timely filed; (2) a non-Bankruptcy Code federal law at issue (here, ERISA, as alleged by Plaintiff, and federal statutes relating to Medicare and TRICARE as explained herein) has more than a *de minimis* effect on interstate commerce; and (3) the proceeding involves a substantial and material question of non-Bankruptcy Code federal law. *United States Gypsum Co. v. Nat'l Gypsum Co.* (*In re Nat'l Gypsum Co.*), 145 B.R. 539, 541 (N.D. Tex. 1992); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, No. 4:09-CV-386-Y, 2009 WL 10684933, at *1 (N.D. Tex. Aug. 18, 2009).

First, it is clear that Humana's Motion—which was filed within Humana's deadline for a responsive pleading—is timely. In fact, courts have considered timely similar motions filed long

after the complaint and summons. *See, e.g.,* Southern District of Texas General Order No. 2011–12, ⁋ 1 ("In an adversary proceeding, a party should move to withdraw the reference within 90 days of the complaint or notice of removal."); *Lifemark Hosps. of La., Inc. v. Liljeberg Enters., Inc.* (*In re Liljeberg Enters., Inc.*), 161 B.R. 21, 27 (E.D. La. 1993) (finding the motion to withdraw reference timely when filed fifty-two days after debtor filed motion to assume an executory contract). Moreover, Humana's Motion was filed before any substantive proceedings occurred.

Second, MedARC pleaded numerous claims under ERISA, a federal statute, which, by its very objective, has more than a *de minimis* effect on interstate commerce. Congress' express objective when enacting ERISA was to "protect interstate commerce." 29 U.S.C. § 1001(b); *see, e.g.*, *In re Liljeberg Enters., Inc.*, 161 B.R. at 27 ("antitrust claims, by their very nature, have a greater than *de minimis* effect on interstate commerce"). It is difficult to imagine any action involving ERISA which does not in some way substantially affect interstate commerce. In addition, the claims at issue are largely governed by Medicare and TRICARE which also have more than a *de minimis* effect on interstate commerce. *See In re St. Mary Hosp.*, 115 B.R. 495 (E.D. PA 1990) ("the Medicare statute regulates 'organizations or activities affecting interstate commerce' in more than in a 'de minimis' fashion"). Therefore, this adversary proceeding is precisely the sort of action that must be resolved by the District Court and withdrawn.

Indeed, ERISA provides a comprehensive scheme for the regulation and enforcement of employee benefit plans. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). This dispute alleges issues with hundreds of discrete medical claims under various employee benefit plans with distinct terms of coverage and benefits, and MedARC has further alleged procedural violations in Humana's claims determinations under ERISA. Adjudicating the claims in this case will require the court to review and determine issues of, *inter alia*, plan coverage, purported procedural

requirements and standards of review under ERISA, appropriate billing of medical claims under industry standards, and the appropriates rates for covered services—all under the shadow of "an enormously complex and detailed statute." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262, (1993) (describing ERISA). Because the Complaint necessarily requires the court to materially and substantially consider, interpret, and apply ERISA, withdrawal of the reference is mandatory.

In addition, notwithstanding MedARC's allegations regarding the relevance of ERISA, this case will instead heavily involve non-bankruptcy federal laws and regulations relating to Medicare Advantage and TRICARE plans. Under Medicare Part C, "MAOs provide the same benefits that an enrollee would receive through the traditional, government-administered, fee-for-service programs under Medicare Parts A and B, as well as additional benefits." *Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584, 586 (11th Cir. 2017). Given the significant federal interest in the MA program, claims like MedARC's are subject to federal exhaustion requirements[6] and preemption defenses that lack any connection to core bankruptcy proceedings. Without waiving its defenses to MedARC's (Revolution's) failure to exhaust the MA program's mandatory administrative remedies, Humana asserts that the fact review of an administrative decision must be brought in ***district court*** further illustrates that this dispute is not based on substantive bankruptcy law.

Further, Humana will establish in its substantive briefing that the expansive scope of the MA preemption provision precludes MedARC's recovery on state law claims arising from MA

---

[6] 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. ***Such action shall be brought in the district court*** of the United States for the judicial district in which the plaintiff resides . . . ."). *See also In Jagow v. Mut. of Omaha Ins. Co. (In re Precedent Health Ctr. Operations, LLC)*, 392 Fed. Appx. 618 (10th Cir. 2010) (granting a motion for withdrawal of the reference due to the highly complex system of statutes and regulations governing Medicare which would predominate over consideration of bankruptcy laws.)

plans. While not required to establish its preemption defense at this time, Humana would emphasize that the preemption analysis requires weighing the federal interest in nationwide uniformity of the MA program against state law claims and that such analysis has no connection with substantive bankruptcy law. *See Houston Methodist Hosp. v. Humana Ins. Co.*, 266 F. Supp. 3d 939, 946 (S.D. Tex. 2017) (conducting a detailed analysis of federal Medicare Advantage and ERISA preemption of state law).

Similarly, HGB provides health care benefits to its TRICARE enrollees at the direction, and on behalf, of the federal government. In particular, HGB partners with the DHA to provide MCS to DHA for the East Region of the TRICARE program, which includes Texas. As a regional TRICARE MCS contractor, HGB is charged with providing eligible TRICARE enrollees with health insurance and conducts business under the delegation of the federal government. 10. U.S.C. §§ 1071, 1073a. Simply put, MedARC's claims against HGB implicate federal law and TRICARE regulations in the same manner as MedARC's claims against HIC implicate federal law and Medicare regulations. In both instances, significant interpretation of federal law and the regulations implementing federally funded health care programs is necessary. Analysis of federal bankruptcy law is not.

As established by MedARC's Complaint, the laws of the United States besides title 11 must be considered and interpreted to resolve the issues raised by claims asserted in the Complaint. Based on MedARC's allegations, the only federal claims at issue in the complaint are based on ERISA. However, the claims at issue in the complaint will also require significant interpretation of federal laws and regulations governing Medicare Advantage and TRICARE plans. The Complaint does not require consideration of title 11 of the Bankruptcy Code. Further, given the nature of MedARC's claims, this Court would materially and substantially be required to consider

laws other than title 11 of the Bankruptcy Code. Additionally, Humana's non-consent to entry of final orders and judgments by this Bankruptcy Court establishes that judicial efficiency and economy are most efficiently served by a resolution of this matter in federal district court.

**B. Alternatively, the Court Should Permissively Withdraw the Reference Because the *Holland* Factors Strongly Weigh in Humana's Favor.**

Although mandatory withdrawal is required as demonstrated above, additionally and alternatively, the District Court may permissibly withdraw the reference for cause shown. *See* 28 U.S.C. § 157(d). To determine whether there is "cause" for the district court to withdraw the reference, the Fifth Circuit has held that the court should consider whether:

    (1)    the underlying lawsuit is a non-core proceeding;

    (2)    a party has requested a jury trial;

    (3)    the bankruptcy process will be expedited;

    (4)    economical use of the debtor and creditor's resources is fostered;

    (5)    uniformity in bankruptcy administration will be achieved; and

    (6)    forum shopping and confusion will be reduced.

*See Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998-99 (5th Cir. 1985). Here, the *Holland* factors strongly weigh in favor of withdrawing the reference.

    **i.    Plaintiff's Complaint Asserts Only Non-core Claims.**

MedARC's Complaint concedes that all of its causes of action are "non-core matters," thus favoring withdrawal. Complaint at ¶ 9; *see, e.g.*, *Curtis v. Cerner Corp.*, No. 7:19-cv-00417, 2020 WL 1983937, at *2 (S.D. Tex. Apr. 27, 2020) (withdrawing the reference *and* all pretrial matters upon review of the six *Holland* factors, and concluding that "[w]here the majority of claims are noncore, withdrawal of the reference is favored") (internal quotation omitted). A proceeding is core *only if* "it invokes a substantive right provided by title 11 or if it is a proceeding that, by its

nature, could arise *only* in the context of a bankruptcy case." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987) (emphasis added). Such is not the case here.

Here, Counts I through III of the Complaint are based on ERISA and Counts IV through VI are clearly based on state law. As noted above, and despite MedARC's allegations, the majority of claims with respect to Humana arise from federally governed and funded Medicare Advantage and TRICARE health plans. MedARC does not allege a single cause of action invoking a substantive right created by federal bankruptcy law, nor do its allegations depend on the Bankruptcy Code for their existence. As a practical matter, because the Complaint asserts only non-core claims, the bankruptcy court may only submit proposed findings of fact and conclusions of law to the district court for *de novo* review. *Id.* at 95. Humana does not consent to entry of final judgment by the Bankruptcy Court. Therefore, this Court should avoid duplicative and wasteful efforts and find the first *Holland* factor weighs in favor of withdrawal.

ii.     **Humana Reserves its Right to Assert Its Seventh Amendment Right to a Jury Trial**

When a party that is entitled to a jury trial makes a proper request and does not consent to a jury trial before the bankruptcy court, "the bankruptcy court must recommend that the adversary proceeding be withdrawn to the district court." *Mobley v. Quality Lease & Rental Holdings, LLC* (*In re Quality Lease & Rental Holdings, LLC*), No. 14-60074, 2016 WL 416961, at *5 (Bankr. S.D. Tex. Feb. 1, 2016) (concluding that because the bankruptcy court *must* recommend withdrawal, "the substantive issues raised in the motions for jury trial and motions to strike . . . [are] best left to the court which will conduct the trial on the merits.") (citing *In re Clay*, 35 F.3d 190, 196-97 (5th Cir. 1994), *report and recommendation adopted*, No. AP 14-6005, 2016 WL 11644051 (S.D. Tex. Feb. 29, 2016)); *Curtis*, 2020 WL 1983937, at *4.

MedARC's breach-of-contract and other state-law claims for money damages generally give rise to a jury trial right. *In re Clay*, 35 F.3d at 194; *Levine v. M & A Custom Home Builder & Developer, LLC*, 400 B.R. 200, 205 (S.D. Tex. 2008) (mem. op.) (Rosenthal, J.) (finding a party was entitled to a right to a jury trial regarding a joint-liability claim for money damages). Further, to the extent that a portion of MedARC's claims are equitable in nature, the Supreme Court has made clear that "[i]f [a] legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact."[7] *Curtis v. Loether*, 415 U.S. 189, 196 n.11 (1974). In the event these claims are not dismissed, Humana reserves its right to exercise its rights at the appropriate time to demand a jury trial to the greatest extent permissible by law, and the second factor therefore favors the withdrawal of the reference. *See Mirant Corp. v. S. Co.*, 337 B.R. 107, 122 (N.D. Tex. 2006) ("[t]he conclusions the court has reached that the action contains non-core claims and that [Humana] is entitled to trial by jury as to certain claims standing alone suggest that there should be a withdrawal of the reference.").

### iii.        The Remaining *Holland* Factors Weigh in Favor of Withdrawal

The other *Holland* factors—expediting the bankruptcy process, uniformity in bankruptcy administration, economical use of the debtor and creditor's resources, and reducing confusion and forum shopping—also weigh in favor of withdrawal. The entirely non-core nature of the Complaint means that the Bankruptcy Court's expertise is not necessary and that a denial of Humana's Motion is certain to result in a costly duplicative *de novo* review. *See In re Clay*, 35 F.3d at 195 ("[i]f anything, jury trials in bankruptcy courts would impede efficiency. These speedy courts were not designed to conduct long jury trials, and most bankruptcy judges and lawyers are

---

[7]        While there is no right to jury trial for the ERISA claims, Humana is entitled to a jury trial on the breach-of-contract claim. *Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co.*, No. 3:11-CV-2205-D, 2012 WL 4442368, at *2 (N.D. Tex. Sept. 26, 2012).

unused to jury procedures."). Moreover, there are no facts to support the notion that a split proceeding will somehow reduce confusion or achieve uniformity. In contrast, granting Humana's Motion will operate to expedite the resolution of the dispute and, ultimately, the administration of the bankruptcy estate. *Curtis*, 2020 WL 1983937, at *4 (holding that "judicial and litigant economy favor determination of the claims by the District Court once").

Finally, MedARC has filed similar suits against other health plans on alleged accounts receivable in the District Court, and there is no evidence of forum shopping by Humana, as there have been no substantive rulings on any of these matters. The balance of all six *Holland* factors weigh in support of withdrawing the reference, and the District Court should grant Humana's Motion for this additional reason.

**C.      The District Court Should Conduct All Pretrial Matters**

All pretrial matters should be decided by the District Court as well. In determining whether the District Court should retain all pretrial matters, courts have considered the following factors: (1) does referral promote judicial efficiency; (2) is the Bankruptcy Court familiar with the allegations; and (3) do the allegations require interpretation of federal bankruptcy law. *See Curtis*, 2020 WL 1983937, at *5; *see also Guffy v. Brown (In re Brown Med. Ctr., Inc.)*, No. BR 15-3229, 2016 WL 406959, at *2 (S.D. Tex. Feb. 3, 2016) (exercising its discretion to retain all pretrial matters as a means to maintain an active role in the case, gain familiarity with the issues that will be presented for trial, and ensure the efficient use of judicial resources). Again, the factors weigh in favor of withdrawal from the Bankruptcy Court to the District Court.

Judicial efficiency is better served by the District Court presiding over pretrial matters concerning MedARC's ERISA and state-law claims (in addition to the Medicare Advantage and TRICARE issues which will be raised by Defendants), which the District Court ultimately must

decide on the merits. As described above, this case involves complex issues regarding medical billing, reasonable charges for services under hundreds of distinct medical plans,[8] ERISA standard-of-review and procedural issues, Medicare exhaustion and preemption issues, TRICARE exhaustion and preemption issues, and overcharges. Through pretrial proceedings, the District Court becomes familiar with the parties and allegations, which leads to a more efficient trial administration. *See, e.g., Kite v. Kite*, No. 2:13- CV-2131, 2014 WL 688196, at *5 (W.D. La. Feb. 13, 2014) ("[W]ithdrawing the case at this stage provides the [district] court with the best opportunity to familiarize itself with the legal and factual issues of the case in preparation for trial, and also seems to be the most efficient use of the time of both the court and the litigants."); *Adler v. Walker (In re Gulf States Long Term Acute Care of Covington, L.L.C.)*, 455 B.R. 869, 878 (E.D. La. 2011) (holding that "it would be inefficient to allow pretrial motion practice to continue in the bankruptcy court, delaying the eventual referral of claims to this Court"). Here, given the complex factual and legal issues involved, having the district court decide pretrial matters will give the parties an opportunity to educate the Court on these important issues prior to trial.

The factors that would favor the bankruptcy court retaining jurisdiction over pretrial matters are not present here. The Bankruptcy Judge has not already decided substantive issues regarding MedARC's claims against Humana, and there is no substantive bankruptcy law at issue in this case. As stated above, MedARC's claims do not involve even a single bankruptcy claim or issue and instead implicate complex areas of non-bankruptcy federal law—ERISA, Medicare, and TRICARE. Even MedARC, a third-party collection agent (not a successor to Revolution), concedes that all of its claims against Humana are non-core within the meaning of 28 U.S.C. §

---

[8] Humana's initial review indicates that Revolution's charges will extraordinarily high for the services rendered. For example, Revolution's charges for monitoring a patient in surgery often exceeded the charges of the surgeon performing the surgery.

157. While a small fraction of any recovery by MedARC could benefit unsecured creditors of Revolution (after payment of substantial prior amounts to professionals, Xynergy, and MedARC itself), this remote economic connection between MedARC's action and the Revolution bankruptcy proceedings does not implicate the Bankruptcy Court's unique expertise regarding federal bankruptcy law and does not warrant continued oversight by the Bankruptcy Court.[9]

In sum, because of the necessity for *de novo* review, the efficiency in conducting pretrial proceedings before the District Court when the Bankruptcy Court has not yet presided over any aspect of the substantive causes of action, and the complete dissociation of all issues from bankruptcy law, the District Court should therefore withdraw all proceedings.

## IV.    PRAYER

Based on the foregoing, Humana respectfully requests that the Adversary Proceeding be withdrawn to the United States District Court for the Northern District of Texas, Dallas Division, and for such other and further relief as is just and proper.

---

[9] The rationale for the Bankruptcy Court's involvement in this litigation is made even more tenuous by the timing of MedARC's suit. Revolution confirmed its chapter 11 plan and the plan became effective more than a year before MedARC filed its complaint. *See* Dkt#139 (Confirmation Order). As the Fifth Circuit has held in dismissing a post-effective date dispute for lack of subject matter jurisdiction, bankruptcy courts' expansive jurisdiction over matters "related to" a bankruptcy case narrows after emergence from chapter 11. *See Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001) ("After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan. . . . No longer is expansive bankruptcy court jurisdiction required to facilitate 'administration' of the debtor's estate, for there is no estate left to reorganize.") (internal citation omitted).

Respectfully submitted,

*/s/Ammar Dadabhoy*
Ammar Dadabhoy
Tx. State Bar No. 24088812
WONG FLEMING
325 North St. Paul Street, Suite 3100
Dallas, TX 75201
Tel: (281) 340-2074
Fax: (866) 240-0629
adadabhoy@wongfleming.com

Richard G. Foster
State Bar No. 07295100
Email: rfoster@prdg.com
Raj S. Aujla
State Bar No. 24064846
Email: raujla@prdg.com
Porter, Rogers, Dahlman & Gordon, P.C.
745 E. Mulberry, Suite 450
San Antonio, Texas 78212
Telephone: (210) 736-3900
Direct: (210) 547-9329
Fax: (210) 736-1992

*Attorneys for Humana Inc., Humana*
*Insurance Company and Humana Military*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 9, 2020, a copy of the foregoing was served on all counsel of record herein by the Court's ECF notification system.

*/s/ Ammar Dadabhoy*
Ammar Dadabhoy

16